IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GAIL MINK, ET AL.                    *

    V.                               *      CIVIL NO. WDQ-11-1937

BALTIMORE BEHAVIORAL               *
HEALTH INC., ET AL.
                                  *

## REPORT AND RECOMMENDATION

This is an action brought under Employee Retirement Income Security Act ("ERISA") and Racketeering Influenced Corrupt Organization Act ("RICO") for various violations regarding plaintiffs' and other participants in certain Retirement and Disability Plans in 2009 and 2010. (ECF No. 20, 1-2). The plaintiffs request the following: reimbursement of unpaid contributions for all plan participants into the Plans in the amount of $49,990.62, representing employees' own contributions not deposited in the Plans and the required employer match not deposited in the Plans (ECF No. 20, 2); pre-judgment interest at the rate of 6% per year and post-judgment interest in accordance with 28 U.S.C. § 1961 for unpaid contributions (ECF No. 20, 3); and reasonable attorney's fees and costs to be determined at a later time (ECF No. 18, 2). Finally, plaintiffs request treble

damages for unpaid contributions for all plan participants under RICO. (ECF No. 20, 4).[1]

Plaintiffs move for an entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against defendants Baltimore Behavioral Health Inc. ("BBH, Inc.") and William Hathaway for failure to appear or otherwise defend in this matter. (ECF No. 18).

This case has been referred to the undersigned magistrate judge in accordance with 28 U.S.C. § 636 and Local Rule 301 and 302. The Court has requested and received additional supporting materials and held a hearing on November 29, 2012, to fully understand the damages evidence and methodology. For the reasons set forth below, the undersigned recommends that plaintiffs' motion be GRANTED in part and DENIED in part, and that damages be awarded as set forth herein.

## I.   Default Judgment Standard

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.

---

[1] Pursuant to Counts II and III, plaintiffs sought reimbursement "for all losses as a result of their failure to invest the employee contributions" ¶ 42 and reimbursement "for all losses as a result of their failure to diversity the employee contributions." (ECF No. 4, ¶ 47). However, as discussed _infra_, plaintiffs did not specifically plead the facts to support these claims nor provide any evidence of these "losses."

In deciding whether to grant a motion for default judgment, the Court must first consider the following three factors: (1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct.  Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3rd Cir. 1987); see also Smith v. Bounds, 813 F.2d 1299 (4th Cir. 1987) (relying on these factors in determining whether a default judgment merited reconsideration).

The Court must also determine whether plaintiff has alleged legitimate causes of action.  In reviewing plaintiffs' Motion for Entry of a Default Judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability.  Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001).  It, however, remains for the Court to determine whether these unchallenged factual allegations constitute a legitimate cause of action.  Id.; see also 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3rd ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the Court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the Court determines that liability is established, it must then determine the appropriate amount of damages.  Ryan,

253 F.3d at 780-81.  Unlike factual allegations as to liability,

the Court does not accept factual allegations regarding damages

as true, but rather must make an independent determination

regarding such allegations.  Credit Lyonnais Secs. (USA), Inc.

v. Alcantara, 183 F.3d 151, 154 (2nd Cir. 1999).  In so doing,

the Court may conduct an evidentiary hearing.  FED. R. CIV. P.

55(b)(2).  The Court can also make a determination of damages

without a hearing so long as there is an adequate evidentiary

basis in the record for the award.  See, e.g., Stephenson v. El-

Batrawi, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an

evidentiary hearing may constitute an abuse of discretion when

the existing record is insufficient to make the necessary

findings in support of a default judgment."); Adkins v. Teseo,

180 F. Supp. 2d 15, 17 (D.D.C. 2001) (finding that a court need

not make determination of damages following entry of default

through hearing, but rather may rely on detailed affidavits or

documentary evidence to determine the appropriate sum).

## II.  Preliminary Factors

The Clerk of Court having filed entry of default on January

3, 2012 (ECF No. 12), the undersigned concludes that the

procedural requirements for entry of default judgment have been

met.  Moreover, because the defendants have failed to file any

responsive pleadings or otherwise show cause as to why default

4

should not be granted, the Court is "not in a position to judge whether any delay was the result of culpable misconduct." Sambrick, 834 F.2d at 73.  Further, defendants' failure to appear deprived plaintiffs of any other means of vindicating their claim and plaintiffs would be prejudiced if default is not granted.

## III. Discussion

### A. ERISA Claims

Accepting the facts alleged in the plaintiffs' complaint as true, the undersigned finds that plaintiffs have adequately stated a cause of action under ERISA in count four of their complaint for unpaid contributions and pre- and post-judgment interest.  (ECF No. 4, ¶¶48-51).

#### 1. Standing

Named plaintiffs Ms. Mink and Mr. Ziemski have brought this lawsuit "on their own behalf and on behalf of the Retirement and Disability Plans and all individual plan participants and beneficiaries." (ECF No. 4, 3).  Section 1132(a)(2) of ERISA allows "a participant, beneficiary or fiduciary" to bring a civil action for breach of fiduciary duty. 29 U.S.C. § 1132(a)(2).  A participant is defined as "any employee or former employee of an employer or any member or former member of an employee organization, who is or may become eligible to receive

5

a benefit of any type from an employee benefit plan."  29 U.S.C.
§ 1002(7).  A plan participant may not sue unless he or she
seeks recovery on behalf of the plan.  Horan v. Kaiser Steel
Retirement Plan, 947 F.2d 1412, 1417-1418 (9th Cir. 1991)("An
individual beneficiary may bring a fiduciary breach claim, but
must do so for the benefit of the plan.").

    Both Ms. Mink and Mr. Ziemski have properly pled that they
are participants in the Baltimore Behavioral Health Retirement
and Disability Plans.  (ECF No. 4, ¶¶ 2, 4.).  They bring suit
on behalf of the plan, and any damages received by plaintiffs
will be paid to the plan, which will then determine the proper
means of disbursement.  (ECF No. 22, 1).[2]  As such, they have
standing to sue Baltimore Behavioral Health, Inc. on behalf of
these plans and for their benefit.

    Plaintiffs also have standing to sue Mr. Hathaway for
breach of fiduciary duty.  An individual is a fiduciary under
ERISA to the extent the person "exercises any discretionary
authority or control respecting management of [a] plan or
control respecting management or disposition of its assets." 29
U.S.C. (21)(A).  The Fourth Circuit has held that where "an
employer is entrusted with employee funds for remittance to a

_____

[2] Plaintiffs' complaint asked the court to "certify the instant action
for class action purposes."  (ECF No. 1 ¶ 34). In later
correspondence, however, plaintiffs clarified that "[p]laintiff's
ERISA claims do not seek class action status." (ECF No. 22, 1).  There
is no requirement for class certification under ERISA.

claims administrator, along with any employer contributions, the employer is acting in a fiduciary capacity under ERISA." <u>Phelps v. C.T. Enter., Inc.</u>, 394 F.3d 213, 219 (4th Cir. 2005).  An individual corporate officer "who voluntarily assume[s] the role of fiduciary . . . become[s] subject to the obligations of a fiduciary under ERISA." <u>Id.</u>  Plaintiffs have alleged that Mr. Hathaway was the Chief Financial Officer of Baltimore Behavioral Health Inc.  As part of his responsibilities he oversaw the payroll and "was entrusted with employee funds for remittance to a claims administrator." (ECF No. 24, 1).  As such, plaintiffs have properly included Mr. Hathaway as a defendant. <u>Phelps</u>, 394 F.3d at 221 (reasonable fact finder could find that officers of company who directed actions on its behalf were fiduciaries under ERISA when, as representatives of the Employer and Plan Administrator, they directed that the Employees' own paycheck contributions be diverted instead for other purposes).

### 2. <u>Count II and III</u>

In Count II, plaintiffs allege that defendant Hathaway and BBH Inc. breached their fiduciary duty to plaintiffs and other plan participants by failing to prudently invest plan assets in violation of 29 U.S.C. § 1104 and 29 U.S.C. § 1106.  (ECF No. 4, ¶ 9-10). Count III alleges a failure to diversify investments, also in violation of § 1104 and § 1106.  (<u>Id.</u>, 10-11).

At the outset, neither Count implicates § 1106, which deals with prohibited transactions but does not relate to prudent or diversified investments.  Both of these counts fall under 29 U.S.C. §1104 (a)(1)(B) and (C). Sub-section (B) requires fiduciaries to act "with care, skill, prudence and diligence," and has been read to require a duty to investigate, review and research investment options for the assets of a plan. Plasterers' Local Union No. 96 Pension Plan v. Pepper, 663 F.3d 210, 215 (4th Cir. 2011).  Sub-section (C) requires that fiduciaries diversify "the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so."  U.S.C. §1104(a)(1)(C).

There is no factual support in plaintiffs' complaint for a violation of either of these sub-sections.  Plaintiffs allege that defendants have "diverted and stolen" employee contributions to "pay tax obligations and other incidental expenses." (ECF No. 4, ¶ 28, 30).  While the complaint parrots the statutory language of § 1104 of lack of "pruden[ce]" and "diversif[ication]," there are no factual allegations that these contributions were invested imprudently, or that investments were not properly diversified.  Indeed, based on the facts asserted, the employee contributions were not invested at all nor were any employer matches invested at all.  As this alleged

behavior is better addressed in Count IV, and for the reasons above, the undersigned recommends that default judgment as to counts II and III be denied for failure to state a claim.

### 3. Count IV[3]

In Count IV, plaintiffs allege that defendants violated 29 U.S.C. § 1104 and 29 U.S.C. § 1106 by "engaging in prohibited transactions by refusing to place employee contributions into the Retirement and Disability plans and use employee contributions for the benefit of parties in interest." (ECF No. 4, ¶ 50).

Under ERISA, plan fiduciaries "are assigned a number of detailed duties and responsibilities, which include the proper management, administration and investment of plan assets." DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 417 (4th Cir. 2007) (citing Mertens v. Hewitt Assocs., 508 U.S. 248, 251, 113 S.Ct. 2063 (1993)). 29 U.S.C. 1104 provides that a fiduciary must adhere to a "prudent man standard of care" and "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. 1104(a)(1). Under 29 U.S.C. § 1106(b)(1) mandates that a fiduciary shall not "deal

---

[3] Count I provides the factual allegations to support Counts 2-5. It may also be read as stating a cause of action under ERISA, 29 U.S.C. § 1104 and 1106. If viewed in this way, however, there is no difference between the claim and requested relief in Count 1 and Count 4.

with the assets of the plan in his own interest or for his own account."

Plaintiffs have provided uncontroverted evidence that defendants failed to make required contributions to the Plans between September 2009 and May 2010.  (ECF No. 18-5, ¶¶ 10-13; ECF No. 18-1, ¶ 8).  They have alleged that these contributions were instead used to pay outstanding tax obligations and other expenses. (ECF No. 4, ¶ 28, 30).  As such, plaintiffs have adequately alleged that defendants did not discharge their duties solely in the interest of the participants of the plan, or properly manage or administer the plan.  The undersigned therefore recommends a finding that defendants violated ERISA § 404 and §406, by failing to deposit the employees' own contributions to the Plans and by failing to contribute the required employer match, and are therefore liable to the Plans.


B. RICO Claims

Plaintiffs allege that defendants "participated in the management and operation of [a] RICO association" by "agreeing to divert and steal employee contributions . . . in violation of 18 U.S.C. § 664."(ECF No. 4, ¶ 53).  These violations of 18 U.S.C. § 664, plaintiffs allege, are predicate offenses for a RICO claim.  (Id. at ¶ 34).

Under 18 U.S.C. § 664, "[a]ny person who embezzles, steals . . . or converts to his own use or to the use of another, any of the . . . assets of any employee welfare benefit plan or employee pension benefit plan . . . shall be fined under this title, or imprisoned not more than five years, or both."  18 U.S.C. § 664.  At least one court has found that a defendant can be held liable criminally under § 664 if he or she acts "with the intent to deprive a retirement plan of its funds or with reckless disregard for the interests of a retirement plan." United States v. Jackson, 2006 U.S. Dist. LEXIS 37107 (W.D. Va. June 7, 2006).

To establish a claim for a RICO violation, a plaintiff must demonstrate that the nature of the underlying offense amounts to: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." 18 U.S.C. § 1964, see also Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).  RICO provides treble damages for violations. 18 U.S.C. § 1964(c).

The above factors set a high bar for plaintiffs.  The enhanced civil penalties of RICO are "reserved for schemes whose scope and persistence set them above the routine." HMK Corp. v. Walsey, 828 F.2d 1071, 1074 (4th Cir. 1987)(denying a RICO claim where despite seven years of fraudulent acts, the behavior amounted to "a single scheme").  RICO was not intended to target "the isolated offender," or for "sporadic activity". Sedima, 473

U.S. at 527.  The Fourth Circuit "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988). Where the alleged activity "does not resemble the sort of extended, widespread, or particularly dangerous pattern of racketeering which Congress intended to combat with federal penalties," the Court will not grant the "heightened civil and criminal penalties of RICO." (Id.).

Here, plaintiffs allege that $49,990.62 of Plan members' contributions were "diverted and stolen" for various pay periods in 2009 through May 2010.  (ECF No. 4, ¶ 32).  Considering the sum of money involved and the relatively short timeframe in which the alleged theft took place, plaintiffs' assertions, while serious, fall more into the category of ordinary or routine offenses rather than an extended or "particularly dangerous" pattern of activity. Plaintiffs' allegations of misconduct therefore do not align with Fourth Circuit precedent finding RICO violations or granting treble damages.  Further, plaintiffs have not provided the Court with any case where civil RICO was found for a violation of duties under ERISA in this situation.  Accordingly, undersigned recommends that default judgment as the plaintiffs' RICO claims be denied.


C.  Damages and Injunctive Relief

ERISA provides for specific damages in cases involving allegations brought under 29 U.S.C. § 1145[4] for unpaid contributions to a multiemployer plan. 29 U.S.C. § 1132(g)(2). While plaintiffs, whose Plan is an individual account plan (ECF No. 4, 2), do not specifically assert claims under § 1145, their complaint is targeted at defendants' "failure to make . . . required contributions to the . . . plans," and they specifically request recovery of unpaid contributions. (ECF No. 4 ¶¶ 27, 37). Accordingly, this Court finds that 29 U.S.C. § 1132(g)(2) provides the appropriate framework for granting relief.

29 U.S.C. § 1132(g)(2) provides in relevant part for the following remedies:

(A)   [Recovery of] the unpaid contributions;

(B)   Interest on unpaid contributions (at the rate for underpayment of federal income taxes under IRC 6621);

(C)   Liquidated damages[5] in an amount equal to the greater of:

i. interest on the unpaid contributions, or

ii.   liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the

---

[4] "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

[5] Plaintiffs do not make a claim for liquidated damages in their complaint.

amount determined by the court under subparagraph

(A);

(D)  Reasonable attorney's fees and costs of the action.

29 U.S.C. § 1132(g)(2).


1.  Unpaid contributions

Plaintiffs allege in their complaint that Plan members'
contributions to the Plan during 2009 and 2010 were diverted by
defendants, who used them for their own purposes.  (ECF No. 4,
¶¶ 15, 16).  These allegations have been supported with
documentary evidence.  (ECF No. 18-5, ¶¶ 10, 11; ECF 18-2 ¶ 8).
Plaintiffs allege withheld contributions and failed employer
matching contributions in the amount of $49,990.62.  Plaintiffs
have provided the Court with a detailed chart breaking down each
Plan-members individual contributions over the relevant time
period and the related matching contributions.  (ECF No. 20, Ex.
1).  The chart is derived from an earlier submission of Lincoln
Financial Group records which documented yearly contributions by
Plan-members and the date of each employee's termination from
employment.  (ECF No. 18 Ex. A, B).

In order to create the chart, plaintiffs calculated that
there were 22 pay periods in the relevant 2009 date range in
which contributions were made to the retirement plan.  (Neuworth
Aff., ECF No. 24-3, ¶ 12).  There were 28 pay periods total in

that date range. (Id. at ¶ 8).   As such, plaintiffs inferred
that there were 6 pay periods in which contributions were
wrongfully withheld.  (Id. at ¶ 12).  Plaintiffs then estimated
plaintiffs' monthly contribution by dividing their total yearly
contribution by the 22 pay periods in which contributions were
made.  (Id. at ¶13).   This monthly contribution was multiplied
by six, the number of pay periods in which these funds were not
contributed to retirement accounts.  (Id. at ¶ 15).  Finally,
plaintiffs added the contractually required 25% employer match
to this number to calculate a total for each individual.  (Id.
at ¶ 18).  This process was then repeated for the 2010 date
ranges, in which plaintiffs calculated that there were 8 pay
periods in which contributions were not made.  (Id. at ¶ 19).
Where the plaintiffs did not have the actual contributions in
the later time period, the plaintiffs reasonably assumed that
the employees continued to work in the same amount through
termination, for purposes of contributions.

     The undersigned has reviewed the relevant financial
information and held a hearing with plaintiffs on November 30th
2012 to review and confirm the information.  The Court finds
that the chart is an accurate reflection of the amounts
contributed by Plan members and required employer match.  In
analyzing the chart, however, the undersigned has found a small
arithmetic error in plaintiffs' calculations: the final total in

their chart is $700 higher than the sum of the individual sub-totals.   This court therefore recommends that damages in the amount of $49,290.62 (rather than the $49,990.62 requested) be awarded to the Plan.

2. <u>Pre-judgment interest</u>

The plaintiffs move for an award of pre-judgment interest on the amount of unpaid contributions at a rate of 6% as of the accrual date beginning on the date which defendants failed to make the required contributions, October 1, 2009.  (ECF No. 20, 3).  In determining an award for pre-judgment interest, the Court must consider "whether such an award is necessary to compensate the plaintiff fully for his injuries." <u>Mary Helen Coal Corp. v. Hudson</u>, 235 F.3d 207, 210 (4th Cir. 2000) (internal citations omitted).

Absent a specific statutory provision, the rate of prejudgment interest is generally a matter left to the discretion of the court.  <u>Quesinberry v. Life Ins. Co. of North America</u>, 987 F.2d 1017, 1031 (4th Cir. 1993), <u>Fox v. Fox</u>, 167 F.3d 880, 884 (4th Cir. 1999).  As noted <u>supra</u>, in cases involving claims for delinquent contributions, ERISA specifically provides for interest on unpaid contributions.  29 U.S.C. § 1132(g)(2).  § 1132 dictates that such interest "shall be determined by using . . . the rate prescribed under section

6621 of the Internal Revenue Code of 1986 [26 U.S.C § 6621]". §
6621 provides that interest shall be calculated at the Federal
short term plus three percent.  26 U.S.C. § 6621(a)(2).  The
undersigned finds this to be the appropriate rate, rather than
the 6% state rate and recommends that prejudgment interest be
calculated in accordance with 26 U.S.C. § 6621(a)(2).


   3. Post-judgment interest

      Federal law mandates the awarding of post-judgment interest
"calculated from the date of the entry of the judgment" at a
rate from "the weekly average 1-year constant maturity Treasury
yield, as published by the Board of Governors of the Federal
Reserve System, for the calendar week preceding." 28 U.S.C. §
1961 (1988). Even though ERISA does not specifically require
"post-judgment interest, it does provide that the statute is not
to be construed to 'alter, amend, modify, invalidate, impair, or
supersede any law of the United States.'" Therefore, the federal
post-judgment interest statute, 28 U.S.C. § 1961 (1988), is
applicable in ERISA cases." Quesinberry, 987 F.2d at 1031
(citing 29 U.S.C. § 1144(d) (1988); I.A.M. Nat'l Pension Fund v.
Slyman Indus., Inc., 901 F.2d 127, 130 (D.C. Cir. 1990)).

      The Court must then determine whether post-judgment
interest is calculated based on the awarded pre-judgment
interest as well as unpaid contributions.  As prejudgment

interest is an element of the plaintiff's complete compensation and therefore part of the merits judgment, "prejudgment interest traditionally has been considered part of the compensation due plaintiff." Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 109 S.Ct. 987, 991 (1989) (citing West Virginia v. United States, 479 U.S. 305, 310, and n. 2, 107 S.Ct. 702, 706, and n. 2 (1987); General Motors Corp. v. Devex Corp., 461 U.S. 648, 655-656, and n. 10, 103 S.Ct. 2058, 2062, and n. 10 (1983)). Therefore, the undersigned recommends post-judgment interest based on the weekly average 1-year constant maturity Treasury yield rate on withheld contributions and pre-judgment interest.

4. Attorneys' Fees and costs

In an ERISA action, a district court has discretionary authority to award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved "some degree of success on the merits." Williams v. Metropolitan Life Ins. Co., 609 F.3d 622, 634 (4th Cir. 2010) (citations omitted). The court may employ a five-factor test as a general guideline in exercise of its discretion in determining whether to grant a request for attorneys' fees. Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1029 (4th Cir. 1993). The five factors include: "(1) degree of opposing parties' culpability or bad faith; (2) ability of opposing

parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions."   Id.

In order to properly determine an award of reasonable attorneys' fees, the court must calculate the "lodestar amount" defined as a "reasonable hourly rate multiplied by hours reasonably expended."   Grissom v. Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008).   The Court determines if fees are appropriate by assessing whether the hours worked were reasonable or include hours that were unnecessary or duplicative.   The Fourth Circuit has adopted the 12 factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (1974) to consider when determining the reasonableness of attorney's fees.   Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978).   These include:

> the time and labor expended; (2) the novelty and
> difficulty of the questions raised; (3) the skill
> required to properly perform the legal services
> rendered; (4) the attorney's opportunity costs in
> pressing the instant litigation; (5) the customary fee
> for like work; (6) the attorney's expectations at the
> outset of the litigation; (7) the time limitations
> imposed by the client or circumstances; (8) the amount
> in controversy and the results obtained; (9) the

experience, reputation and ability of the attorney;
(10) the undesirability of the case within the legal
community in which the suit arose; (11) the nature and
length of the professional relationship between
attorney and client; and (12) attorneys' fees awards
in similar cases.

Id.

While it is clear that plaintiffs are entitled to an award
of reasonable attorneys' fees, plaintiffs have not yet provided
documentation to the Court regarding the time spent on the case
or the amount of attorneys' fees sought.  Accordingly, the
undersigned recommends that the request for attorney's fees be
denied, at this time.  If plaintiffs still seek attorney's fees,
they should submit the necessary documentation promptly.


**5. Injunctive Relief**

Plaintiffs ask the Court to "enjoin Defendants in the
future and require them to place all employee contributions into
the Retirement and Disability Plans." (ECF No. 4, ¶ 57).  Under
ERISA, a participant may bring a civil action to "enjoin any act
or practice which violates any provision of this subchapter or
terms of the plan" 29 U.S.C. § 1132(a).  As plaintiffs have
provided sufficient allegations that defendants are engaging in
a practice violative of their fiduciary duties under ERISA, the
Court recommends that defendants be enjoined from wrongfully
diverting employee contributions from the Plans.

D.  <u>Conclusion</u>

The undersigned recommends that:

1. The Court GRANT plaintiffs' motion for default judgment and injunctive relief and

2. That damages be issued for unpaid contributions in the total amount of $49,290.62, in addition to pre-judgment interest in accordance with the rate set forth in 26 U.S.C. § 6621(a)(2), and post-judgment interest on the entire amount.


Date: 12/4/12 _____          _____/s/_____
                                 Susan K. Gauvey
                                 United States Magistrate Judge