**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division of Maryland)**

| | | |
|---|---|---|
| **GAIL MINK, et al.** | * | |
| **PLAINTIFFS** | * | |
| | * | |
| v. | * | **Civil Action Number: WDQ-11-01937** |
| | * | |
| **BALTIMORE BEHAVIORAL** | * | |
| **HEALTH, INC., et al.** | * | |
| **DEFENDANTS** | * | |

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

Plaintiffs, by counsel, respectfully submit this Motion for Attorneys' Fees and Memorandum In Support of Plaintiffs' Motion for Attorneys' Fees.

**RELEVANT BACKGROUND**

On July 14, 2011, Plaintiffs filed a timely initial complaint. (Docket Entry 1). Plaintiff Mink as a vested plan participant brought the instant lawsuit on behalf of all plan participants. (Docket Entry 1). Later, Plaintiff Robert Ziemski, another vested plan participant, was added as a plaintiff and the complaint was amended. (Docket Entry 4).

The substance of the complaint has never changed. Specifically, all the claims arose out of the same operative facts concerning Defendants' actions by their refusal to place employee contributions into a retirement plan from October 2009 through May 2010. (Docket Entry 1 Counts I –V). The complaint and amended complaint were based on the established ERISA and alleged RICO violations for Defendant's refusal to place the employee contributions into the retirement plan that adversely affected all plan participants in the retirement plan. (Docket Entry 1). There were more than fifty (50) plan participants in the retirement plan during the time period alleged in the complaint. (Docket Entry 18, Exhibit C).

Defendants refused to answer either the complaint or the amended complaint. On December 28, 2011, Plaintiffs were then forced to file a Motion for Default, requesting that the Clerk of this Court enter an order of default. (Docket Entry 11). On January 3, 2012, the Clerk entered the order of default against both Defendants. (Docket Entry 12).

Plaintiffs were also forced to file a Motion for Protective Order to obtain written discovery from a third party administrator, Lincoln Financial Group for the retirement plan. (See Docket Entry 10). This Court ordered that a subpoena be sent to Lincoln Financial Group compelling the production of documents related to all plan participants' benefits in the retirement plan from October 2009 through May 2010. (Docket Entry 10).

On March 3, 2012, Judge Quarles of this Court signed the protective order and permitted the subpoena and written discovery to be sent to Lincoln Financial Group. (See Docket Entry 15). The subpoena covered numerous issues related to plan benefits on behalf of all plan participants. Lincoln Financial Group responded to the subpoena and produced hundreds of pages of written documents that Plaintiffs' counsel had to review.

On February 13, 2012, Judge Quarles ordered that the undersigned counsel either serve the Defendants with a Motion for Default Judgment or provide a status report within thirty (30) days outlining why a default judgment was not being served on Defendants. (Docket Entry 13). On March 13, 2012, Plaintiff complied and filed a status report which was approved by Judge Quarles. (Docket Entries 16 and 17).

On March 30, 2012, Plaintiffs filed for Default Judgment on the merits of their claims. (Docket Entry 18). On June 11, 2012, Plaintiffs filed a Supplement to the Motion for Default Judgment after obtaining the Lincoln Financial Group discovery addressing the specific amounts

owed to each individual plan participant for the period from October 2009 through May 1, 2010. (Docket Entry 20).

On August 20, 2012, Plaintiffs were ordered to supply case law regarding Rule 23 Class Actions. (Docket Entry 21). Plaintiffs complied and produced such case law well ahead of the required time limit. (Docket Entry 22). These issues were never raised again by the Court after Plaintiff complied with its order.

On August 29, 2012, Plaintiffs were ordered to clarify specific items related to damages that had been requested on behalf of all plan participants. (Docket Entry 23). Plaintiffs again complied and addressed the legal issues ahead of the deadline given by the Court. (Docket Entry 24). These issues were never raised again by the Court after Plaintiffs complied with its order.

On November 1, 2012, this Court ordered a hearing to address primarily the issue of damages that were owed to the entire class. (Docket Entry 25). After the Court contacted both Defendants, the hearing was postponed. On November 29, 2012, a hearing took place in Judge Gauvey's chambers. The hearing was lengthy and took over one hour before it was completed. At the end of the hearing, Magistrate Gauvey issued a report and recommendation that granted a monetary judgment, plus prejudgment and post-judgment interest on behalf of all plan participants including Plaintiffs Mink and Ziemski in the retirement plan from October 2009 through May 2010. (See Docket Entry 33). The monetary judgment was almost one hundred per cent of what Plaintiffs had earlier requested. (See Docket Entries 24 and 33).

## I. PLAINTIFFS ARE ENTITLED TO THEIR REASONABLE ATTORNEY'S FEES.

### A. <u>An Award of Attorney Fees is Appropriate and Required In This Case Pursuant to ERISA and The Five Factor Test.</u>

ERISA provides that a court has the discretion to award attorney fees and costs. See 29 U.S.C. §1132(g)(1) ("In any action under this subchapter... by participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.").

The Fourth Circuit has established a five-factor test in determining whether an award of attorney fees in an ERISA case is appropriate. The factors, which were enunciated in *Reinking v. Philadelphia American Life Ins. Co.*, 910 F.2d 1210, 1217-1218 (4th Cir. 1990), are as follows:

1. the degree of opposing parties' culpability **or** bad faith;
2. the ability of opposing parties to satisfy an award of attorneys' fees;
3. whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
4. whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
5. the relative merits of the parties' position.

*Id.* at 1217-1218. *See also Johannsen* v. *District No. 1 - Pacific Coast District, MEBA PensionPlan,* 292 F. 3d 159, 178-79 (4th Cir. 2002); *Jani, as Administrator of Estate of Michael L.Webster, deceased Plaintiff,* v. *Bert Bell/Pete Rozelle NFL Player Retirement Plan, et al,* 2005 U.S. Dist. Lexis 44331 (D. Md. 2005), (attached as Exhibit 4), *aff'd,* 2006 U.S. App. Lexis 30594 (4th Cir. 2006).

The five factors are only "general guidelines," and "some may not be relevant in some contexts." *See Johannsen v. District No. J- Pacific Coast District, MEBA Pension Plan,* 292 F.3d 159, 179 (4th Cir. 2002). No one factor is determinative, however, the five factors are the general parameters of concerns that a court should address. *Id.* In determining whether to award fees, the Fourth Circuit has also held:

> In exercising its discretion under the statute, the court may use the five factors as a guide, but it must also bear in mind the remedial purposes of ERISA to protect employee rights and to secure effective access to federal courts.

*See Reinking v. Philadelphia American Life Insurance Co.* 910 F. 2d 1210, 1218 (4th Cir. 1990).*See also McElwaine v. US West, Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999) ("we must keep at the forefront ERISA's remedial purposes that 'should be liberally construed in favor of protecting participants in employee benefit plans.'" [citation omitted]).

As set forth below, an award of attorney fees is appropriate and required in this case.

1. Defendants' Bad Faith & Culpability

The first factor in determining attorney fees weighs heavily in Plaintiffs' favor.

Aside from Plaintiffs reasons for filing suit, Defendants acted in bad faith and with culpability throughout the entire proceedings in this case, including their complete failure to defend this case, participate in settlement negotiations, or accept responsibility for their actions.

This Court, in *Jani* v. *BertBell/Pete Rozelle NFL PlayerRetirement Plan, et al,* 2005 U.S. Dist. Lexis 44331 (attached as Exhibit 4), *affd,* 2006 U.S. App. Lexis 30594 (4th Cir. 2006), held the following concerning culpability and bad faith:

> Culpability connotes wrongful conduct that is not intentional or deliberate. *Clark* v. *Metropolitan Life Insurance Company, 384 F. Supp. 2d 894, 2005 WL 1667785, slip op. (KD.Va. 2005); Edmonds v. Hughes Aircraft Co.*, 1998 WL 782016, slip op. (E.D.Va. 1998). Culpability can be found where a plans decision is "discernibly against the weight of the evidence." *Edmonds,* 1998 WL 782016 at *5; *see also Edmonds v. Hughes Aircraft, 145 F.SD 1324 (4th Cir. 1998).*
>
> Bad faith connotes deliberate misconduct to harm another or advance one's self-interest. *Clark, 384 F. Supp. 2d 894, 2005 WL 1667785* (bad faith found where the plan denied death benefits contrary to the opinion of its own medical expert and after an incomplete investigation); *Cox* v. *Reliance Standard Life Insurance, 179 F.Supp.2d 630 (E.D.Va. 2001)(ba.d* faith found where plan denied death benefits after an inadequate investigation and where the plan sought out, but then rejected the opinion of Commonwealth's attorney that it would be impossible to determine whether beneficiary was committing a felony at the time of his death). Not every abuse of discretion constitutes bad faith. *Wheeler* v. *Dynamic Engineering, Inc., 62 F.3d 634 (4th Cir. 1995).*

Plaintiffs are not required to prove that Defendants acted in both bad faith; a finding of

culpability without bad faith is sufficient to satisfy the first factor. *See Jani* v. *Bert Bell/Pete Rozelle NFL Player Retirement Plan,* 2005 U.S. Dist. LEXIS 44331 (D. Md. 2005) (in assessing that the first factor weighed in petitioner's favor, this Court stated that "the Plan's decision indicates culpable conduct, if not bad faith")(Exhibit 4); *Hoover* v. *Provident Life and Accident Ins. Co.,* 290 F.3d 801, 809-810 (6th Cir. 2002) (court upheld award of attorney fees under ERISA even though no finding of bad faith, only culpable conduct); *McPherson* v. *Employees' Pension Plan of American Reinsurance Co.,* Inc., 33 F.3d 253, 258 (3rd Cir. 1994) ("We believe it will further the objective of ERISA if fee awards are employed to deter behavior that falls short of bad faith conduct.").

In this case, the record evidence is dear that Defendants acted in bad faith. At the very least, Plaintiffs satisfy the first factor since there is no doubt that Defendants' conduct was highly culpable.

First, as outlined in Plaintiffs' complaint and evidenced by the discovery record, Defendants acted in bad faith when they failed to place all owing contributions into Plaintiffs' retirement accounts from October 2009 through May 1, 2010. This was a clear breach of their fiduciary duty to all plain participants including Plaintiffs Mink and Ziemski. There can be no doubt that Defendants failure to make all necessary plan contributions constituted bad faith, where the failure to deposit these funds was a deliberate act made without concern for the harm incurred by Plaintiffs as a result. Further, bad faith was apparent where there was no attempt to inform Plaintiffs that their bi-weekly contributions were withheld for an improper purpose, nor have those funds since been reimbursed.

Second, Defendants acted in bad faith where they failed to appear or defend to engage in settlement discussions with Plaintiffs. This Court through Judge Gauvey even reached out to Defendants in a final attempt to enter into a resolution other than the entry of default judgment, however, Defendants failed to appear at the final hearing held on November 29, 2012 by Judge

Gauvey. Defendants failure to appear or otherwise defend has caused significant delay in compensating all plan participants for the amount they are owed. Therefore, not only did Defendants act in bad faith for failing to make the required contributions but they have also acted in bad faith in failing to make any attempt to redress the wrongs established here.

Because there clearly has been a sufficient showing of bad faith or culpability, consideration of the remaining four factors necessarily follows. *See O'Bryhim* v. *Reliance Standard Life Ins. Co.,* 1999 U.S. App. LEXIS 19232 (4th Cir. 1999) (attached as Exhibit 5). *See also Smith* v. *Continental Casualty Co.,* 289 F. Supp. 2d. 709 (D.C. Md. 2003) *(rev 'd. and vacated on other grounds),* 369 F.3d 412 (4th Cir. 2004).

2. Defendants Have the Ability to Pay Attorney Fees & Costs

Plaintiffs are uncertain about Defendants' financial condition. Plaintiff have not been able to obtain accurate information about the Defendants' financial condition. Neither Defendant has filed for bankruptcy. Defendant Baltimore Behavioral Health has an active board of directors and has both state and federal contracts.

3. An Award of Attorney Fees Will Serve as Deterrence to Others.

An award of attorney fees in this case would deter other Corporations and Plan administrators like Defendant Baltimore Behavioral Health and Defendant Hathaway from acting in a similar fashion. Thus, the third factor weighs in Plaintiffs' favor.

In *Johannsen et al. v. District No. 1 - Pacific Coast District, MEBA Pension Plan* 2001 U.S. Dist. Lexis 10556 (D. Md. 2001), *aff'd,* 292 F.3d 159 (4th Cir. 2002) (Exhibit 5), this Court weighed in on the deterrence factor when it awarded attorney fees to Plaintiffs in an ERISA case:

> Without a fee award, the message this litigation would transmit to the Plan and other employee benefit plans is that stonewalling is costless: the sponsoring employer and its captive plan can deny employees benefits to which they are entitled, and the plan

will only be required to pay what it would otherwise originally have had to pay when it is compelled by a court to do so.

Thus, the other deterrent effect a fee award can exact is to communicate that employees must be accorded benefits according to the terms of written plans and that benefits decisions cannot be tainted by misguided political vendettas.

*Id.*

The Court's holding in *Johannsen* directly applies to this case. Defendants failed to make the required contributions on behalf of Plaintiffs and failed to return these contributions to Plaintiffs. "Stonewalling" appears to be the tactic applied by Defendants in failing to appear or defend the present action. As indicated by *Johannsen*, "stonewalling" is exactly the type of conduct intended to be deterred through the statutory grant of attorney's fees.

4. <u>All Plan Participants Will Benefit From Plaintiffs' Successful Litigation.</u>

In this case, factor four clearly supports an award of attorney fees and costs. All Plan Participants in the retirement plan from October 2009 through May 2010 will benefit from this litigation since the Plan terms will be complied with and Plan participants shall receive the benefits to which they are entitled. Further, it is undisputed that no plan participant was or will be disadvantaged as a result of this Court's rulings.

5. <u>The Relative Merits Of the Parties' Positions Weighs In Favor Of Awarding Attorney Fees To Plaintiffs.</u>

The merits of the Plaintiffs' position support an award of attorney fees. The record generated by Plaintiffs demonstrates that Defendants failed to place the required contributions in Plaintiffs' accounts. Defendants have never denied that they did not place the contributions in the retirement plan.

Defendants have failed to appear and therefore have failed to present any evidence to the contrary. In failing to appear, Defendants have presented no case whatsoever. Factor five plainly weighs in the Plaintiffs' favor.

6. <u>Conclusion</u>

Four factors clearly favor an award of attorney fees. Indeed, Plaintiffs have more than satisfied the test for being compensated for the fees and costs incurred by their counsel in order to receive the benefits to which they are entitled.

This Court and the Fourth Circuit have previously held that if the prevailing party can prove that they satisfy a majority of the five factors that an award of attorneys fees is required. See *Cross v. Bragg*, 2010 WL 3609530 (D. Md. 2010) and *Wheeler v Dynamic Eng'g Inc.* 62 F. 3d 634, 639 (4th Cir. 1993).

## II. THE AWARD PLAINTIFFS SEEK ARE REASONABLE UNDER THE LODESTAR METHOD OF CALCULATING FEE AWARDS.

Attorney fees are to be awarded equal to "the number of hours reasonably expended multiplied by a reasonable hourly rate," (the "lodestar") plus reasonable litigation expenses. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blum v. Stenson*, 465 U.S. 886 (1984). The Supreme Court and Fourth Circuit have repeatedly stated that "[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989), *quoting Blum*, 465 U.S. at 888; *see also Pennsylvania v. Delaware County Citizens' Council*, 478 U.S. 546, 565 (1986); *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998); *Buffington v. Baltimore County*, 913 F.2d 113, 127 n.11 (4th Cir. 1990).

In *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992), the Fourth Circuit pointed out that "*Hensley* concerned the award of reasonable attorney's fees under *42 U.S.C. § 1988*, but

the Court nonetheless noted that 'the standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'...including the FLSA."

In determining whether the requested attorney fees are reasonable, courts are guided by the twelve *Johnson* factors. *See Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-719 (5th Cir. 1974). Many of the *Johnson* factors are subsumed in the determination of the reasonable rate and reasonable hours. *Blum*, 465 U.S. at 898, 900;*Hensley*, 461 U.S. at 434 n.9; *Daly v. Hill*, 790 F.2d 1071, 1077-78 (4th Cir. 1986). These factors are (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fee awards in similar cases.

Many of the *Johnson* factors are subsumed in the determination of the reasonable rate and reasonable hours. *Blum* v. *Stenson,* 465 U.S. 886, 898-900 (1984); *Hensley* v. *Eckerhart,* 461 U.S. 424 at 434 n.9 (1982); *Daly* v. *Hill,* 790 F.2d 1071, 1077-78 (4th Cir. 1986). Hence, each factor does not need to be individually addressed in a separate heading. Plaintiffs have considered the factors in a comprehensive view of the litigation. *See Imgarten* v. *Bellboy Corp.,* 383 F. Supp. 2d 825, 836 (D. Md. Aug. 16, 2005) ("[r]ather than discuss each of the twelve factors separately, the Court will cover them in a description of the litigation as a whole.")

As explained below and set forth in the attached time records and declarations of counsel, the hours expended and rates claimed by Plaintiffs' attorneys are reasonable and should be awarded. *See* Declarations of Neuworth, Melick and Hirsch (Exhibits 1, 2, and 3).

As the attached time records and declarations demonstrate, the hours expended and rates claimed by Plaintiffs' attorneys are reasonable for purposes of a "lodestar" calculation".

**A. The Amount of Time Expended is Reasonable.**

The time spent by the attorneys and the paralegal for which Plaintiffs seek compensation is reasonable. To begin, the Court should consider "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation." *Hensley*, 461 U.S. at 435. Presuming that Judge Gauvey's recommendation is accepted, Plaintiffs and all plan participants in the retirement plan between October 2009 and May 2010 (more than 50) will recover all the benefits to which they were entitled, prejudgment and post-judgment interest and injunctive relief, prohibiting Defendants from continuing to breach their fiduciary duties. (Docket Entry 33). Judge Gauvey also noted that "it is clear that plaintiffs are entitled to an award of reasonable attorney's fees", though plaintiffs had not yet submitted the documentation necessary to support such an award. *Id.*

Plaintiffs seek compensation for hours of attorney time and hours of paralegal time that Plaintiffs' counsel spent to obtain this result. *See* Declarations of Neuworth, Melick, and Hirsch (Exhibits 1, 2 and 3). In light of the significant success achieved (Johnson factor No. 8), and necessary time expended on all aspects of the case (Johnson factor No. 1), the time was reasonable and should be fully compensated. ATTACHMENT A to Declaration of Neuworth provides the chronological, contemporaneous time records reflecting this work for the attorneys and the paralegals. *See also*, *Cross v. Bragg*, 2010 WL 3609530 (D. Md. 2010).

**B. The Hourly Rates Are Reasonable.**

The hourly rates requested in this case are also reasonable. They are in line with "prevailing market rates in the relevant community" for the type of work involved. (Johnson factor No. 5). *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Trimper*, 58 F.3d 68, 76 (4th Cir. 1995); *Buffington*, 913 F.2d at 129; *Spell v. McDaniel*, 824 F.3d 1380, 1402 (4th Cir. 1987).

The test for "reasonableness" is "what attorneys earn from paying clients for similar services in similar circumstances." *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 174-5 (4th Cir. 1995). Plaintiffs' counsel has calculated its hourly rates ($450 for Attorney Neuworth, $190 for Attorney Melick, $190 for Attorney Hirsch) within the current range set forth by this Court in its Guidelines Regarding Hourly Rates, Local Rules, Appendix B, ¶ 3. *See* Declaration of Neuworth, Exhibit 1.

The hourly rate for paralegals ($115) was also calculated based on the current rates within the range set forth by this Court in its Guidelines Regarding Hourly Rates, Local Rules, Appendix B, ¶ 3.

**IV. CONCLUSION**

For the reasons stated above, Plaintiff's respectfully request that they be awarded the attorney fees requested in the amount of $28,813.00. The fees were incurred as follows:

| **Case Development and Administration** | **Hours Incurred** |
|---|---|
| Richard Neuworth | 2.00 |
| Lucy Hirsch | 0.30 |
| Michael Melick | 0.00 |
| Diane Eisemann | 0.00 |

| **Pleadings** | **Hours Incurred** |
|---|---|
| Richard Neuworth | 2.60 |
| Lucy Hirsch | 1.00 |
| Michael Melick | 0.00 |
| Diane Eisemann | 2.20 |

| **Written Discovery** | **Hours Incurred** |
|---|---|
| Richard Neuworth | 1.75 |
| Lucy Hirsch | 13.20 |
| Michael Melick | 0.00 |
| Diane Eisemann | 1.00 |

| **Motions Practice** | **Hours Incurred** |
|---|---|
| Richard Neuworth | 8.45 |
| Lucy Hirsch | 72.90 |
| Michael Melick | 2.70 |
| Diane Eisemann | 0.00 |

| **Fee Petition & Bill of Costs Preparation** | **Hours Incurred** |
|---|---|
| Richard Neuworth | 5.00 |
| Lucy Hirsch | 10.90 |
| Michael Melick | 0.00 |
| Diane Eisemann | 3.00 |

| **Total Hours** | **Hours Incurred** |
|---|---|
| Richard Neuworth | 19.80 |
| Lucy Hirsch | 98.30 |
| Michael Melick | 2.70 |
| Diane Eisemann | 6.20 |

***TOTAL FEES REQUESTED***

| **Attorney/Paralegal** | **Number of Hours** | **Rate/hr** | **Fees** |
|---|---|---|---|
| Richard Neuworth | 19.80 | $450.00 | $8,910.00 |
| Lucy Hirsch | 98.30 | $190.00 | $18,677.00 |
| Michael Melick | 2.70 | $190.00 | $513.00 |
| Diane Eisemann | 6.20 | $115.00 | $713.00 |

**Total Fees-exclusive of interest. $28,813.00**

Respectfully submitted,

Richard P. Neuworth (Bar #01052)
Lucy Hirsch (Bar # 29801)
Lebau & Neuworth, LLC
606 Baltimore Avenue - #201
Baltimore, Maryland 21204
410.296.3030
*Attorneys for Plaintiffs*

**Certificate of Service**

I hereby certify that on this 13th day of December, 2012 I caused a copy of Plaintiffs' Motion for Attorney's Fees and Memorandum In Support of Plaintiffs' Motion for Attorney's Fees and attachments to be served by e-filing.

Richard P. Neuworth (Bar #01052)